## John C. Scott, Plff. in Err., v. Charles M. Swain.

A written obligation annexed to a lease as follows: "In consideration, etc., I hereby agree to become surety for the faithful performance of the conditions of the lease to be performed by the lessee; and in default thereof on his part to be liable therefor as if I was lessee,"—constitutes the person signing it a surety and not a mere guarantor.

The fact that the lessor first proceeded against the lessee, and collected a portion of the rent, does not change the legal character of the obligation assumed by the surety.

(Decided January 17, 1887.)

January Term, 1886, No. 226, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas No. 1 of Philadelphia County to review a judgment for plaintiff for want of a sufficient affidavit of defense in an action of covenant. Affirmed.

This action was brought by Charles M. Swain against John C. Scott, to recover the sum of $666.66 for eight months' rent of premises leased to the Clay Commercial Telephone Company

under a lease dated January 1, 1884, to which was added the following agreement, both of which were set out in the affidavit of claim:

In consideration of the execution of the foregoing indenture of lease by the parties thereto, and of the sum of $1 to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby agree to become surety for the faithful performance of all or any of the conditions thereof which are to be kept, done, and performed on the part of the said Clay Commercial Telephone Company, lessees, therein; and in default thereof on the part of said lessees, to be liable therefor to the lessor as fully to all intents and purposes as if I was the lessee, binding myself, my heirs, executors, administrators, and assigns, by virtue of these presents.

In witness whereof I have hereunto set my hand and seal this eighteenth day of March, A. D. 1884.

Signed, sealed, and delivered in presence ) John C. Scott,
of E. W. Carritt, and F. U. Smith.          ∫                [Seal]

Plaintiff averred that he had by due process of law exhausted all the property and effects of said telephone company, prior to the bringing of this suit for the payment of said rent, and that there is now due and payable to the plaintiff the sum of $666.66 for eight months' rent from March 1 to October 1, 1885.

The defendant filed his affidavit of defense, alleging the business carried on by the telephone company; the value of a telephone exchange; the work and skill required in its construction; the manner in which it was built; the strong fixtures bolted to the roof; the heavy cables running from other roofs and fastened to the fixtures; the labor and cost of attaching the wires to the switches; that the plaintiff made inquiry concerning the business, and had it fully explained to him; that the plaintiff demanded security from the company; that defendant desired to provide against any accident or circumstance whereby the plant could be in any way disturbed or removed by any person other than a skilled workman of the company, and the safety of the cables, wires, and other property of the company jeopardized, or the lives and property of citizens in that neighborhood endangered; that he also desired that in case the com-

pany would be unable to meet its liabilities, or to carry on its business, the company or the defendant would be able to sell the plant at private sale to other companies, and thereby protect the creditors and stockholders of the company from loss; that it was finally agreed that in case any of the conditions of the lease should be violated, the defendant would be personally liable, and the plaintiff would look to the defendant alone for damages, and not to the telephone company or any of its property in the building; that in accordance with the agreement, the contract on the back of the lease was prepared, and on March 18, 1884, was signed by the defendant; that the telephone company built a wooden stand covering a greater part of the roof, stretching five heavy cables from the fixture on the roof of the exchange to other buildings over half a square away, and established a telephone exchange at an actual cost of about $10,000 with over 500 persons using the exchange; that on April 24, 1884, the American Bell Telephone Company filed a bill of complaint in the circuit court of the United States for the eastern district of Pennsylvania, against the Clay Commercial Telephone Company, alleging that the telephones used by the latter company were infringements upon patents owned by the Bell Company, and praying for an injunction against the Clay Company; that no action was taken in that suit, and the Clay Company continued to carry on its business and pay the rent until the month of February or March, 1885, when the Bell Company made an application in the circuit court for a preliminary injunction; that on April 25, 1885, an order was issued out of the circuit court restraining the Clay Company from further carrying on business, and the first Monday of June, 1885, was fixed for the final argument of the injunction suit; that as soon as the restraining order was issued, the defendant took measures to prevent the slightest disobedience of the order of the court; that the only way to secure obedience to the order was by discharging the employees, and closing up the exchange to prevent entrance into it; that the employees were discharged, telephones and other property of the company were collected and placed in the exchange, the door leading into the exchange was locked an fastened; the janitor having the care of the building and in the employ of the plaintiff was informed of the fact, and instructed to watch and protect the exchange, to prevent any person from getting into it or carrying away the property of the company,

which the janitor undertook to do, and all of which was well known to the plaintiff; that on June 5, 1885, the injunction case was argued in the circuit court, and the court held the case under advisement; that after the argument, about the middle of June, 1885, the defendant went to the plaintiff, and informed him of the proceedings, requesting him not to commence any action for the collection of the rent, but to wait until the case had been decided in the circuit court, so that it would be known whether the Clay Telephone Company would be permitted to carry on its business or compelled to stop, and stating that if the decision should be in favor of the Clay Telephone Company, the company would immediately resume business, and all the rent due the plaintiff would be promptly paid; but that if the decision should be against the Clay Telephone Company, the company would sell the exchange and other property, and pay the plaintiff and the other creditors the amounts due them; and the defendant would arrange with the plaintiff for the satisfaction of any demand the plaintiff would then have against the company; that the plaintiff then promised the defendant that he, the plaintiff, would wait a reasonable time for the decision to be rendered, and would take no action for the collection of the rent; that the defendant relied upon the promise made by the plaintiff, and the exchange remained closed and locked under the watch and care of the plaintiff's employee, the janitor of the building; that before July 7, 1885, and before the case in the circuit court was decided and without the knowledge or consent of, or notice or warning to, the Clay Telephone Company or to the defendant, the plaintiff, by himself, or an agent or constable employed by him, forced an entrance into the exchange and took possession of the room and roof of the building and all the property therein and thereon, valued at $15,000; that on July 7, 1885, under a pretended levy or distraint for rent, and before the decision of the circuit court was rendered, and without the knowledge or consent of, or notice or warning to, the Clay Telephone Company or to the defendant, all the property of the Clay Telephone Company contained in, and on the roof of, the building was sold, including a large number of patented telephones, the switch boards and the stand and fixtures erected upon the roof; that the defendant is informed that the amount realized from said sale was about $56; that after the sale the wires were stripped from the electrical conductors, and they and the switch boards

and the telephones were carried away; that although the stand and fixtures on the roof were sold, yet the purchasers have been unable to take them away because of the heavy cables and wires stretched from other buildings in the neighborhood and fastened to the said stand and fixtures, and the inability of the purchasers to detach the wires and cables without destroying the cables and wires fastened thereto, or without destroying the property and endangering the lives of the citizens in that neighborhood, so that the said stand and fixtures have remained and yet remain upon the roof of the building, whereby the said Clay Telephone Company has been and yet is wholly unable to use or occupy the roof of the building or to erect another stand or fixtures thereon, and is unable to remove the cables and wires from the stand and fixtures that were sold and yet remain upon the roof, without injuring and destroying said stand and fixtures; that by reason of the wrongful entry of the plaintiff into the said telephone exchange, and the sale of the property of the said Clay Telephone Company, the said Clay Telephone Company has been injured and damaged to the extent of more than $15,000; that the defendant says he is advised and believes that the plaintiff had no lawful right or authority to enter into the said telephone exchange, or to levy and sell the said property and fixtures, or to levy upon and sell the said property and fixtures without notice to the said Clay Telephone Company or to the defendant; that the plaintiff has now no lawful action or cause of action against the defendant, under said lease and agreement, and the terms and conditions thereof; and that all of which is true, as the defendant is informed, believes, and expects to be able to prove at the trial of the case. The plaintiff entered a rule for judgment for want of a sufficient affidavit of defense, which rule the court made absolute.

The assignment of error specified the action of the court in entering judgment upon the copy of the lease and guaranty, and statement of rent and averments filed, and in entering judgment against the defendant for want of a sufficient affidavit of defense.

*George W. Smyth* and *William W. Ker,* for plaintiff in error. —In this case the averments contain both too much and too little to fix a liability upon the defendant. The averment that the plaintiff had by due process of law exhausted all the prop-

erty and effects of the company, prior to the bringing of the suit, is an allegation of fact *dehors* the instrument. Even if it should be held to be proper to make an averment to justify a suit against the guarantor the statement should be one of specific facts, upon which the court could base its decision that the plaintiff had exercised the necessary diligence against the principal debtor, by process that was due and lawful.

This is an action of covenant, yet there is no averment of the breach of any of the covenants contained in the lease. Having agreed to become surety, not for the payment of the rent, but for the faithful performance of all or any of the conditions in the lease, the defendant is entitled to have set forth upon the record, specifically and clearly, the particular breach of condition for which the suit is brought, in order that in case of a recovery he may at any time hereafter avail himself of the record and plead it in his defense. Wall v. Dovey, 60 Pa. 212.

The consideration mentioned in the contract is "In consideration of the execution of the foregoing indenture of lease by the parties thereto, and of the sum of $1 to me in hand paid." If, as the instruments show, the lease was executed on the first day of January, 1884, and the contract was signed by Scott on March 18, 1884, the execution of the lease was a past consideration that would be void for insufficiency, while the other consideration was a nominal one.

If there was any other consideration not expressed in the instrument, it could be shown by parol testimony, if it be not directly inconsistent with that expressed. Buckley's Appeal, 48 Pa. 491, 88 Am. Dec. 468; Taylor v. Preston, 79 Pa. 442.

A writing may be reformed on account of fraud, accident, or mistake. So parol proof is sometimes admitted to explain latent ambiguities, local terms, and terms of art in writing. Fisher v. Deibert, 54 Pa. 460; Hetherington v. Clark, 30 Pa. 393; Miller v. Fichthorn, 31 Pa. 252.

An express contract between parties, so ambiguous in its terms as to require interpretation may (in order to arrive at what they meant) be considered in the light of the surrounding circumstances at the time. This often enables courts to declare the meaning of contracts, but they are not allowed to add words, or to consider words and sentences to be in that are not there. Frazier v. Monroe, 72 Pa. 169; Cox v. Freedley, 33 Pa. 124, 75 Am. Dec. 584; Lacy v. Green, 84 Pa. 518.

Parol evidence of the understanding of the parties in relation to the construction of a written agreement may be given to explain that which is otherwise ambiguous. Bertsch v. Lehigh Coal & Nav. Co. 4 Rawle, 139; Selden v. Williams, 9 Watts, 9; Baltimore & P. S. B. Co. v. Brown, 54 Pa. 77; McGinity v. McGinity, 63 Pa. 38; Woods v. Sherman, 71 Pa. 105.

An ambiguity being raised by parol may be explained by parol. Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108.

The consideration may be proved by parol. White v. Weeks, 1 Penr. & W. 486; Galway's Appeal, 34 Pa. 242; Bowser v. Cravener, 56 Pa. 132; Lewis v. Brewster, 57 Pa. 410; Giltinan v. Strong, 64 Pa. 242.

The facts set forth in the affidavit of defense are perfectly consistent with the language contained in the contract; and if the plaintiff violated the terms of the agreement, or deprived Scott of the security he otherwise would have had, he thereby released Scott from all liability. Hutchinson v. Woodwell, 107 Pa. 509.

The whole question is one of fact that should be submitted to a jury for its determination.

The plaintiff, having assumed the care and custody of the property, became its bailee. The act of assembly relating to proceedings on a distress requires that notice of the distress be given. A sale of the goods without the notice required by law would have been irregular and unlawful. If the sale was illegal, the landlord thereby became a trespasser. McLean v. McCaffrey, 3 Pennyp. 408.

It cannot be contended that the landlord, under the circumstances, could serve the notice upon himself. The relation of landlord and tenant was a confidential relation. Matthew's Appeal, 104 Pa. 444.

The landlord is made a judge in his own cause upon the terms of conducting himself with perfect uprightness and with a careful regard of the rights of the defendant. McElroy v. Dice, 17 Pa. 163; Murphy v. Chase, 103 Pa. 262.

*D. R. Patterson* and *Robert H. McGrath,* for defendant in error.—A declaration on this lease, with a statement of the covenant for payment of rent and a breach of covenant, would be sufficient to recover. 2 Chitty, Pl. *551.

Imhoff v. Brown, 30 Pa. 504, is directly in point, that with a

copy of the instrument on which suit is brought may be filed a statement respecting the extent of plaintiff's claim and his right to sue. This is exactly what was done in this case.

Whether the agreement of the plaintiff in error on which suit is brought is a contract of suretyship or guaranty is immaterial. By its express words he has bound himself, his heirs, executors, administrators, and assigns as fully as if he were the original lessee. As long ago as 1842 this was held to be an absolute undertaking, with the same liability as if he had signed the lease, and it has not since been doubted. Blackburne v. Boker, 1 Clark (Pa.) 15.

But a contract for the true and faithful performance of the contract by the lessee is a contract of suretyship, not of guaranty. Coe v. Vogdes, 71 Pa. 383; Allen v. Hubert, 49 Pa. 259; Reigart v. White, 52 Pa. 438; Ashton v. Bayard, 71 Pa. 139; Korn v. Hohl, 80 Pa. 333.

Per Curiam:

It is clear that the written obligation which the plaintiff in error executed did not make him a mere guarantor but made him a surety.

The fact that the lessor did first proceed against the lessee and collect a portion of the rent did not change the legal character of the obligation assumed by the surety. We find nothing in the whole case to relieve him from that liability, and the judgment was rightly entered.

Judgment affirmed.